JEROME J. DANFORTH et al.

v.

THE VILLAGE OF HINSDALE.

*Opinion filed February 17, 1899.*

1. SPECIAL ASSESSMENTS—*what a proper division into installments.*
An assessment ordinance is not void, for failure to specify the
amount of the installments, which provides that the assessment be
divided into seven installments, the first to be one-seventh of the
assessment with fractional amounts added, payable at confirmation,
and each of the others to be equal in amount and multiples of $100,
payable annually, with six per cent interest after thirty days from
confirmation. (*Latham* v. *Village of Wilmette,* 168 Ill. 153, followed.)

2. SAME—*confirmation should not be refused because contract price is
less than estimate.* Confirmation of a special assessment, the prelimi-
nary proceedings of which have conformed to the statute, should
not be refused because the contract price is less than the commis-
sioner's estimate of the cost, if there is no claim of fraud or mis-
conduct by the commissioners.

(MAGRUDER, J., dissenting.)

APPEAL from the County Court of DuPage county;
the Hon. JOHN H. BATTEN, Judge, presiding.

W. B. WILSON, for appellants.

LINUS C. RUTH, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal from a judgment of the county court
of DuPage county confirming a special assessment levied
by the village of Hinsdale to pay for the improvement
of Second street, in the said village, from the west line
of Garfield avenue to the east line of Lincoln street, by
draining, grading, curbing and paving the same.

On June 9, 1897, the commissioners appointed to make
an estimate of the cost of the proposed improvement
made a report in writing to the president and board of
trustees, estimating the total cost of the improvement
at the sum of $4200. This report was on the last men-

tioned date duly adopted and approved by the president and board of trustees of the village. A petition was then filed in the county court praying for the appointment of commissioners to make an assessment upon the property benefited to pay for the cost of the improvement. Commissioners were appointed, and they made and returned an assessment roll in conformity to the statute. On the 6th day of July, 1897, the court entered an order requiring all objections to the assessment roll to be filed on or before July 8. Within the time required by the order of court the three appellants, J. J. Danforth, John B. Jarrett and Emma A. Cowles, filed objections to the confirmation of the assessment roll. On July 12 a hearing was had, and all objections were overruled except those to be tried by a jury. On July 9 the assessment was confirmed except as to the premises of appellants. Nothing further was done until October 9, 1897, when appellants moved the court for leave to file additional objections. This motion was denied. The parties then, by agreement, waived a jury and agreed that the issues to be submitted to a jury should be tried by the court. On the hearing upon the evidence introduced the court entered judgment confirming the assessment on the appellants' property, and they appealed.

Section 3 of the ordinance read in evidence was as follows: "That the special assessment herein ordered to be assessed and levied shall be divided into seven installments, the first of which installments shall include one-seventh of said assessment, together with all fractional amounts, and each of the remaining installments shall be equal in amount and multiples of one hundred (100) dollars,—first installment payable at the confirmation of the assessment, the other installments annually thereafter, with six per cent interest after thirty days from the confirmation."

It is insisted in the argument that the ordinance is void because it fails to specify the amount of each or

any of the installments.    The same objection was interposed to a similar ordinance in *Latham* v. *Village of Wilmette*, 168 Ill. 153, and we held the ordinance valid.    The decision in that case is conclusive of the question here raised.

It appears from the record that on the third day of August, 1897, a contract was entered into between the village of Hinsdale and one Olaf Vider, a solvent and responsible person, for the construction of the improvement provided for in the ordinance.    It also appears that on the fourth day of October, 1897, before the hearing was had, the appellants entered a motion for leave to file further objections to the confirmation of the assessment, one of which was that the assessment was for a greater amount than the actual cost of the improvement.    This application was denied by the court, and the court also, on the hearing, refused to admit the contract in evidence. The ruling of the court on this branch of the case is relied upon as error.

The contract offered in evidence, as set out in the abstract, was as follows:

"Agreement entered into this third of August, 1897, between Olaf Vider and the village of Hinsdale:    That Vider should furnish the labor and material and make the improvements provided for in the ordinance, according to the specifications attached, and be paid as follows: For each cubic yard of excavation, seventeen cents; for each lineal foot of curb constructed, fourteen cents; for each square yard of pavement, complete, seventy-six cents; for each lineal foot of 12-in. diameter drain, with man-holes and catch-basins complete, seventy-five cents; for each lineal foot of 9-in. drain, with man-holes and catch-basins complete, sixty cents.    Specifications part of this contract.    Improvement requires the following approximate quantities: wooden curb, 1780 lineal feet; earth excavation, 1060 cubic yards; cedar-block paving, 2630 square yards, including 160 feet 12-in. drain, with

four man-holes and four catch-basins and iron covers; weight of man-holes 470 pounds, and of catch-basin covers 325 pounds. The price per square yard for pavement complete must include the grading of grass plots and all necessary work on man-holes and catch-basins."

It will be observed that the contract does not show the amount to be paid the contractor for the work to be done. Whether the amount was less or more than the assessment would have to be determined from other evidence. But conceding that the work to be done at the prices specified in the contract would not amount to as much as the assessment, would that fact, of itself, authorize the court to refuse to confirm the assessment? The village had appointed three competent persons to estimate the cost of the improvement, as provided by the statute. The persons appointed had discharged their duties, so far as appears, honestly and conscientiously. A report had been made to the village authorities, which had been approved as required by the statute. Indeed, no fraud or misconduct on the part of the persons appointed to estimate the cost of the improvement is claimed or charged. While it was the duty of the persons appointed to estimate the cost of the improvement to agree upon such an amount as would neither exceed nor be less than what the improvement would actually cost, yet the fact that the amount agreed upon might be too small or too large ought not to be a sufficient ground to defeat the assessment, in the absence of fraud or misconduct on the part of those appointed to estimate the costs of the improvement. If a rule of that character were adopted no assessment could be sustained, as it would be in many cases impossible for the persons appointed to estimate the cost of the improvement to determine that fact with absolute certainty. Indeed, the fact that the statute requires any and all excess which may be collected above the cost of the improvement to be returned to the property owner would seem to indicate that it was not with-

in the contemplation of the legislature that the exact amount of the cost of an improvement could be determined before the improvement had been made. After the improvement has been made and the actual cost has been ascertained no greater sum can be collected from the property owner, although the estimated cost may be for a larger sum. But in an application to confirm a special assessment, where all the proceedings have conformed to the statute and no part of the assessment has been collected, we do not think the property owner can interpose as a defense that the actual cost of the improvement will be less than the estimated cost made by the persons appointed to make an estimate of the cost.

The judgment of the county court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

I cannot agree with the view of this case taken by the majority of the court for the following reasons:

The commissioners appointed to estimate the cost of the improvement reported $4200.00 as the estimated cost thereof. Commissioners were appointed by the county court to assess the amount of the estimated cost, as so reported, upon the property subject to assessment. The court overruled all objections, except those triable by jury, and, as to the questions proper to be submitted to the jury, a jury was waived, and the cause was submitted to the court for trial without a jury. Upon the hearing of the cause on October 18, 1897, the objectors below, the present appellants, offered in evidence a contract, dated August 3, 1897, entered into between the village of Hinsdale and one Olaf Vider, a solvent and responsible person, for making the improvements, provided for in the ordinance set out in the petition to the county court, at an actual cost of $2698.20, as is easily seen by calculation, the contract giving the number of feet and yards to be improved and the prices per foot and yard. By the

terms of this contract the improvement was to be made at an actual cost of from twenty-five to thirty per cent less than the estimated cost, as fixed by the commissioners appointed by the village board. The court refused to admit the contract in evidence. The main question presented for consideration is, whether or not the court erred in thus excluding the contract.

The petitioner below, appellee here, the village of Hinsdale, objected to the introduction of the contract, upon the ground that there was no objection pending before the court under which the evidence was admissible. This was the only ground upon which the contract was excluded; and, in order to understand it, it is necessary to refer to some of the proceedings, which took place prior to the hearing before the court on October 18, 1897.

A rule was theretofore made by the court, that all objections to the assessment roll should be filed by July 8, 1897. On July 3, 1897, the present appellants filed their objections to the confirmation of the assessment. On July 12, 1897, the appellee, by its attorney, moved that all of the objections so filed, except those triable by a jury, should be overruled; and such objections were thereupon overruled. Afterwards, on October 4, 1897, the appellants moved for leave to amend their objections, and for leave to file additional objections; but this motion was denied, and leave to file such additional objections was refused. All, except the last of said additional objections, were merely a more explicit and detailed presentation of the questions involved in the objections as originally filed. But the last of the additional objections, which was not embraced in the objections originally filed, was that the assessment was for a greater amount than the cost of the improvement provided for, and all items that might lawfully be included in said assessment.

The court erred in refusing to allow the last of the additional objections, as above stated, to be filed, and also in refusing to admit the contract offered in evidence.

Section 23 of the Practice act provides that "at any time before final judgment in a civil suit, amendments may be allowed on such terms as are just and reasonable, * * * in any matter, either of form or substance, in any process, pleading or proceeding which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defense." In *Misch* v. *McAlpine*, 78 Ill. 507, where leave was asked by a defendant, who had filed the general issue, to file an additional plea, which was indispensable to enable him to make a legal defense; and where it appeared that the defendant had been guilty of no culpable negligence in asking for such leave, it was held that the trial court erred in refusing to grant the leave, such refusal having been based upon terms that were not just and reasonable. (*Drake* v. *Drake*, 83 Ill. 526; *Chandler* v. *Frost*, 88 id. 559). Filing additional pleas comes within the meaning of amendments as specified in the statute. It is the right of a party, at any time before judgment, to make any amendment which is necessary to present a defense, subject to the imposition by the court of reasonable terms.

It is manifest that, in the present case, the additional objection here under consideration could not have been filed on July 3, 1897, when the original objections were filed. The contract with Vider was not let until August 3, 1897. It was this contract, which showed that the levy of the assessment was excessive. Application to file an objection, under which it was proper to introduce the contract in evidence, was made before the hearing, to-wit: on October 4, 1897, and at as early a date as it was possible to make it.

The defense, sought to be made by the introduction of the contract of August 3, 1897, was a good one. The property owners should not have been assessed $4200.00 to pay for the improvement when the contract let by the board of trustees for the making of the improvement in-

volved an expenditure of only $2698.20.    It is true, that, under the statute, it would have become the duty of the village to return the surplus over and above the actual cost of the improvement to those who paid it, as soon as such surplus should be received.    But it is difficult to see why it was necessary to collect such surplus, when a contract was already made for the making of the improvement at a figure, which would leave no surplus on hand. The county court had the power, under section 33, article 9, of the City and Village act, at any time before final judgment, to modify, alter, change or annul the assessment which had been returned, or to cause the same to be re-cast by the commissioners.    This could have been done in the present case, if the contract had been admitted, and it had thereby become apparent to the court, that justice required the reduction of the amount of the assessment.    In *City of Bloomington* v. *Blodgett*, 24 Ill. App. 650, the facts showed, that the commissioners in the proceeding there made a report, estimating the cost of the improvement at $3900.00, and that afterwards a contract was let for the construction of the improvement for the sum of $2900.00, or $1000.00 less than the estimated cost of the assessment.    In that case, the court say: "If the excessive and unnecessary levy was known to appellee at the time, or before the judgment of the county court confirming the assessment of the commissioners, as provided in sections 30 and 31 of article 9, chapter 24, R. S., he should then and there have made his defense.    *    *    * The city may undoubtedly proceed to assess and collect special assessments, based upon the estimate made in conformity with sections 20 and 21, article 9, chapter 24, although such estimate may exceed the actual cost of the proposed improvement; hence, so long as it is not known that such assessment is too large no one would be permitted by the county court, either when confirming the assessment or in rendering the judgment upon which the lands are to be sold, to interpose, as a defense, the mere

possibility that the assessment may ultimately prove larger than is needed. But, from the moment that it clearly appears there is an excessive levy, either from letting the contract for the proposed work, or otherwise, we think such excess should not be collected, and becomes a legal defense, *pro tanto*, which the county court should recognize, as, arising at the time, it can be shown in the manner above stated that the levy is excessive and unnecessary." In *Boynton* v. *People*, 159 Ill. 553, we referred to the foregoing case of *City of Bloomington* v. *Blodgett*, and approved of it, and endorsed it as announcing "sound doctrine." The same case was also referred to with approval in *People* v. *McWethy*, 165 Ill. 222.